IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

JUSTIN LYTLE AND CHRISTINE MUSTHALER,
*Plaintiffs - Appellees,*

v.

NUTRAMAX LABORATORIES, INC. AND NUTRAMAX LABORATORIES
VETERINARY SCIENCES, INC.,
*Defendants - Appellants.*

————————————

On Appeal from the United States District Court
for the Central District of California
Case No. 5:19-cv-00835-FMO-SP
Honorable Fernando M. Olguin

————————————

## RESPONSE TO
## PETITION FOR REHEARING AND REHEARING *EN BANC*

————————————

Mark R. Sigmon
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
5 W. Hargett Street
Suite 1001
Raleigh, NC 27601
(919) 451-6311
msigmon@milberg.com

Greg F. Coleman
Adam A. Edwards
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
800 S Gay Street
Suite 1100
Knoxville, TN 37929
(865) 247-0080
gcoleman@milberg.com
aedwards@milberg.com

Michael H. Pearson
Daniel L. Warshaw
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
(818) 788-8300
mpearson@pwfirm.com
dwarshaw@pwfirm.com

Matthew D. Schultz
LEVIN, PAPANTONIO,
  RAFFERTY, PROCTOR,
  BUCHANAN, O'BRIEN,
  BARR & MOUGEY, PA
316 S Baylen Street, Suite 600
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .......................................................................ii

INTRODUCTION .................................................................................... 1

REASONS FOR DENYING THE PETITION ......................................... 2

I.    Nutramax Has Abandoned Its Principal Argument and
      Shifted Gears .......................................................................... 2

II.   The "Noticeably More Deference" Standard Has Long
      Been Applied By This Court, And That Was Not the
      Focus of This Appeal and Does Not Affect the Result
      Here ........................................................................................ 7

III.  Rehearing Is Not Warranted On the Standard for
      Expert Testimony at the Rule 23 Stage ................................. 9

      A.   *Olean* did not *sub silentio* overrule *Sali*, and that
           was not the focus of this appeal and does not
           affect the result here ...................................................... 9

      B.   The Opinion does not entrench or deepen a circuit
           split regarding admissibility, and that was not
           the focus of this appeal and does not affect the
           result here ..................................................................... 13

      C.   The Opinion does not "undermine" the rigorous
           analysis or create any "perverse incentives." ............. 15

CONCLUSION ...................................................................................... 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Allen v. Ollie's Bargain Outlet, Inc.*,
 37 F.4th 890 (3d Cir. 2022) ........................................................ 13

*B.K. v. Snyder*,
 922 F.3d 957 (9th Cir. 2019) ........................................................ 9

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) .................................................................. 4, 10

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ................................................................... 16

*DZ Rsrv. v. Meta Platforms, Inc.*,
 96 F.4th 1223 (9th Cir. 2024) ........................................................ 8

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
 644 F.3d 604 (8th Cir. 2011) ....................................................... 14

*Olean Wholesale Grocery Cooperative, Inc.
v. Bumble Bee Foods, LLC*,
 31 F.4th 651 (9th Cir. 2022) ................................................. 4, 9, 10

*Patel v. Facebook, Inc.*,
 932 F.3d 1264 (9th Cir. 2019) ....................................................... 7

*Sali v. Corona Reg'l Med. Ctr.*,
 909 F.3d 996 (9th Cir. 2018) ................................................ *passim*

*Stearns v. Ticketmaster*,
 655 F.3d 1013 (9th Cir. 2011) ..................................................... 19

*Wal-Mart Stores Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................ 13

*Wolin v. Jaguar Land Rover North America, LLC,*
    617 F.3d 1168 (9th Cir. 2010) ........................................ 8

**Rules:**

Fed. R. App. P. 28(j) ....................................................... 3

Fed. R. Civ. P. 23 ........................................................ 7, 9

Fed. R. Civ. P. 23(f) ....................................................... 3

# INTRODUCTION

The principal issue in this appeal is straightforward: for a class to be certified, either (a) is it enough for the plaintiff's expert to completely design a damages model, specifying what inputs will go into the model, what type of outputs will be generated by the model, and how the outputs will show a classwide impact one way or another (whether good for the plaintiff or bad), or (b) must that model actually be executed before the class can be certified? The panel, after applying relevant Supreme Court and Ninth Circuit precedent in a detailed opinion, correctly concluded the former—because a damages model need only be "capable" of proving classwide damages, not that the damages model after execution show actual outputs that are favorable to the plaintiff. The results of the model here will apply classwide, even if they're bad for the Plaintiffs.

In its petition for rehearing, Nutramax pretends that this case is about other things. It pretends that this case is about (1) the general level of deference that the panel should have applied, or (2) this Court's supposedly having *sub silentio* overruled a controlling decision about what evidence can be considered, and a related circuit split (neither of which Nutramax mentioned in its briefs), or (3) the panel's ignoring

certain supposed effects of its ruling. None of those arguments are correct. But even if any of them had merit, this would not be the case in which to consider them on rehearing; the first two arguments were never squarely presented in this case and do not affect the result anyhow, and the third argument is bound up with case-specific facts. In any event, the panel reached the right result by applying longstanding precedent from this Court.

## REASONS FOR DENYING THE PETITION

### I. Nutramax Has Abandoned Its Principal Argument and Shifted Gears.

As even a cursory review of the merits briefs reveals, the principal issue on appeal is the one mentioned above: whether it is enough for the plaintiff's damages expert to completely design a study, or must that study actually be executed and results generated before the class can be certified? Nutramax always argued that it was the latter, as a categorical rule and as a matter of law, which allowed it to claim *de novo* review and to avoid a deferential abuse of discretion review focused on the particular facts of this case.

Now, however, the petition asserts that "Nutramax was not arguing for a categorial rule," citing Nutramax's opening brief's concession that a

class could be certified before the model is executed in a rare and narrow type of cases. Pet. at 22 n.6. But a categorical rule is exactly what Nutramax always sought in this case: (1) its Rule 23(f) petition sought a categorical rule, *see, e.g.*, No. 22-80047, Doc. No. 1-2, at 18 ("On the merits, the Court should hold that where plaintiffs are relying on expert evidence to show the existence of a classwide injury, then their expert must actually conduct an analysis presenting such evidence at the class certification stage."); (2) its opening brief sought the same thing, *see, e.g.*, AOB 35 (arguing that the district court erred by "adopt[ing] the view, expressed by certain other lower courts, that a plaintiff is not required to actually execute a proposed conjoint analysis to support class certification"); (3) its Rule 28(j) letter asserted that the cited case shows "why it is important that an expert actually develop and perform a proposed model," Doc. No. 45 at 1; and (5) throughout this appeal, Nutramax has asserted *de novo* review and not abuse of discretion review, which was predicated on its claim that there was a categorical rule and thus an error of law below.

Based on all of that, the panel correctly concluded that Nutramax was seeking a categorical rule, with the opinion mentioning the phrase

"categorical rule" six times. Pet.App.1a–42a. And the panel correctly held that there is no such categorical rule, for the many reasons outlined in the panel's opinion. Pet.App.14a–25a. Those reasons include the Supreme Court's holding in *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), that a class action plaintiff must "establish[] that damages are *capable* of measurement on a classwide basis" (emphasis added), and this Court's en banc decision in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651, 667 (9th Cir. 2022), which applied *Comcast* and held that that a "district court is limited to resolving whether the evidence establishes that a common question is *capable* of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial" (emphasis in original). *See also id.* at 663 (referencing "a court's determination regarding what a statistical regression model *may* prove or is *capable of* proving" (emphasis added)). The panel also analyzed a host of other decisions from this Court and other courts supporting its holding, and it noted that "since the determination of class certification is largely within the discretion of the district court, it is worth noting that the vast majority of district courts in our circuit to consider the question have found that a damages expert

need not fully execute his or her proposed conjoint analysis before it can be relied upon at class certification." Pet.App.24a.

Nutramax does not challenge any of that in its petition. Thus, Nutramax no longer seeks the categorical rule that was always at the heart of this case. Instead, the petition relies on other arguments, none of which are persuasive and none of which were the focus of the appeal. Those arguments are addressed below.

But before addressing those arguments, it's worth reiterating one key point acknowledged by the Plaintiffs and highlighted by the panel's opinion: that even though there is no categorical rule requiring execution of a damages model before class certification, it is not enough for a plaintiff to "merely gesture at a model or describe a general method." Pet. App.31a (cleaned up). Rather, the model must be significantly developed to allow for the "rigorous analysis" required. The panel recognized that and then thoroughly analyzed the district court's own thorough analysis of the facts surrounding Dr. Dubé's model in this case, concluding that "the district court did not abuse its discretion in finding Dr. Dubé's proposed model sufficiently sound and developed to satisfy" the standard. Pet.App.5a; *see* Pet.App.29a-34a (analyzing Dr. Dubé's model). And there is plenty of record evidence to support that conclusion, because Dr. Dubé:

(1) identified the target population for the conjoint survey, based on his research into the case (2-ER-143–44);

(2) worked with an economics firm to prepare purchased data, develop databases for the study, and analyze data from Nutramax (2-ER-144–49);

(3) considered price data for the contested products, allowing him to determine the relevant market (*id.*);

(4) made all of the necessary design decisions for the survey, such as which product features he would test, which include the claims at issue and also the brand (by also testing competing branded products), the package sizes, the product types (chews or chewable tablets), and the price range (2-ER-149–56, 5-ER-802, 5-ER-834–35); and

(5) specified the mathematical analysis that he'll perform on the raw data (2-ER-1258–59).

In short, Dr. Dubé did everything but "program" the survey questionnaire (that is, write the questions, which he testified was a mere "implementation detail" (5-ER-796)), "pretest" the questions after drafting them, and then execute the survey. 5-ER-796–98. And that is why Dr. Dubé testified that the survey had already been "designed." 1-ER-802.

Plaintiffs raise this point because Nutramax's petition states that "Dr. Dubé, however, submitted a report that merely *proposed* conducting a conjoint analysis," noting the handful of minor things left for him to do. Pet. at 4-5 (emphasis in original). But that ignores how completely and thoroughly the model *was already developed*—it ignores all of the things that Dr. Dubé already did. The district court analyzed all of the things that Dr. Dubé had done to design the survey and concluded that they were sufficient to satisfy Rule 23. The panel then affirmed that exercise of discretion.

Every part of Nutramax's petition implicitly relies on the assertion that Dr. Dubé's model was "undeveloped," but that is just not true. Dr. Dubé's model was simply unexecuted.

## II. The "Noticeably More Deference" Standard Has Long Been Applied By This Court, And That Was Not the Focus of This Appeal and Does Not Affect the Result Here.

Nutramax argues that the panel erred by citing a case from this Court holding that more deference is given to grants of class certification than denials of class certification. Pet. at 7-8 (quoting Pet.App.14a (quoting *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275 (9th Cir. 2019))). Nutramax argues that those cases are based on Second Circuit precedents that the Second Circuit has since disavowed. Pet. at 7-8.

This Court has regularly cited that level of deference for almost 15 years, starting with *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010). And many of those cases were decided years after the 2017 case in which the Second Circuit disavowed that principle. *See, e.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024).

In any event, the level of deference was not disputed by the parties in this case, and so it was not the focus of any of the briefing or oral argument. Thus, this is not the case in which to overrule a longstanding line of cases from this Court.

More importantly, nothing in the panel's opinion suggests that the level of deference—which now is undisputedly abuse of discretion, the only issue being whether there is a further gloss of "noticeably more deference"—affected the result here. And Nutramax does not explain how or why it supposedly affected the result. Indeed, the panel never invoked the "noticeably more deference" principle after citing it in the general standard of review section. Thus, at most, the panel could grant limited panel rehearing and excise that one line from its opinion, changing nothing else. Even if the "noticeably more deference" standard is wrong, there is no need to do anything else.

## III. Rehearing Is Not Warranted On the Standard for Expert Testimony at the Rule 23 Stage.

### A. *Olean* did not *sub silentio* overrule *Sali,* and that was not the focus of this appeal and does not affect the result here.

Nutramax argues that the panel's opinion was wrong because, under *Olean,* 31 F.4th 651, all evidence supporting class certification must be admissible, whereas the panel's opinion held that while admissibility must be considered when the district court weighs the evidence, admissibility is not required, citing *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Pet. at 9-12.

<u>First</u>, Nutramax is wrong that *Olean* somehow *sub silentio* overruled *Sali*. As the panel recognized, *Sali* holds that, at the class certification stage, "admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at th[is] stage." *Sali*, 909 F.3d at 1006; *see id.* at 1004 ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification."). *Sali* reached that conclusion after analyzing the issue at length, including after analyzing opinions from several sister circuits. *Id.* at 1006. Further, as the panel recognized, this Court has reiterated the holding of *Sali* since. *See, e.g.*, *B.K. v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019).

Faced with that, Nutramax now argues that *Olean* somehow *sub silentio* overruled *Sali*. But *Olean* never even cited *Sali*, because the issue of admissibility simply did not arise in *Olean*. And it didn't arise because the defendant in *Olean* never challenged admissibility, as the Court explicitly recognized. 31 F.4th at 665. While *Olean* did use the term "admissible" a few times to describe evidence supporting class certification, the opinion did not render a holding about a key legal issue never presented, nor did it overrule a clear precedent never even cited. *See also* Pet.App.26a (recognizing that *Olean* language as "dicta").[1]

Nutramax also argues that, under *Olean*, "[e]ven when admissibility is not challenged (as in *Olean*), the court, as part of its rigorous analysis, must still 'consider[] factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives).'" Pet. at 10 (quoting *Olean*). But the district court *did that* here, taking a hard look at, for example, the inputs and assumptions and projected outputs behind Dr.

---

[1] Furthermore, *Olean* applied *Comcast*, 569 U.S. 27, and *Comcast* explicitly did not address the admissibility issue, as Nutramax's petition recognizes. Pet. at 13. Thus, *Olean* did not reach the same issue that *Comcast* did not reach.

Dubé's model. And the panel analyzed that. Pet.App.29a–34a. Thus, Nutramax's assertion that the district court looked only at Dr. Dubé's "methodology's reliability in general," and that the district court did not do a "rigorous analysis" (Pet. at 12), is simply not so.

Nutramax also emphasizes, as it did before the panel, that Dr. Dubé did not know whether the results of his survey would show actual damages for all or none of the class. Pet. at 11–12. But that does not mean that the results will not be classwide results, as the panel recognized. Pet.App.19a. For example, Dr. Dubé's survey may ultimately show that consumers place no value on the falsity of the false label claims at issue here, but that result would apply uniformly to *all* the class members, and Nutramax has never explained why that is not so.

Second, the legal question of whether admissibility was required was never the focus of this appeal. Indeed, the panel's opinion noted that Nutramax did not even cite *Sali*, the seminal case cited by the district court for its holding that admissibility is important to consider but not dispositive: "The district court correctly cited *Sali* for this exact principle. Nutramax inexplicably asserts the district court committed legal error by

doing so without ever discussing *Sali* or explaining why, in Nutramax's view, the rule announced in that case is inapplicable." Pet.App.16a n.3.

Furthermore, that legal question was not the focus because this case doesn't hinge on admissibility. The district court, after citing *Sali*, nonetheless held that the evidence about Dr. Dubé's model *was admissible*. 1-ER-12 ("At best, defendants' challenges to Dr. Dubé's survey methodology go to the weight given the survey, not its admissibility. In short, the court finds that … Dr. Dubé's expert reports and testimony are admissible to the extent the court relies on them in determining class certification" (cleaned up). Nutramax recognized that in its opening brief: "The district court abused its discretion in finding Dr. Dubé's opinion admissible…." AOB at 37. Thus, the district court did the "rigorous analysis" required, which does not mandate relying only on admissible evidence—but the district court nonetheless found Dr. Dubé's opinion admissible.

And the panel's opinion, while noting that admissibility was not required, still recognized that admissibility is an important factor. For example, it noted that if it's unlikely that significant evidence will be admissible, that fact "weighs against" class certification. Pet.App.16a.

After noting that admissibility still matters, nothing in the panel's opinion suggested that the district court erred in finding Dr. Dubé's model admissible or otherwise reliable or suggested that there were any problems regarding the admissibility or reliability of that model. In other words, this case doesn't hinge on admissibility. So, even if this Court wanted to address the admissibility issue en banc at some point, this case is not the vehicle in which to do so.

### B. The Opinion does not entrench or deepen a circuit split regarding admissibility, and that was not the focus of this appeal and does not affect the result here.

Nutramax argues that the panel's opinion "entrenches" or "deepens" a circuit split about whether the evidence must be admissible, and it claims that Supreme Court "guidance" suggests that the evidence must be admissible, citing *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 354 (2011). Pet. at 12-16. But *Sali* already definitively addressed the issue, and in doing so it analyzed and applied *Wal-Mart*. Indeed, the *Allen* case cited by Nutramax as collecting cases on this issue cited *Sali* as putting the Ninth Circuit on one side of the split. *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 906 (3d Cir. 2022) (Porter, J., concurring). And *Sali* itself cited the Eighth Circuit case cited by Nutramax as being on

one side of the split. 909 F.3d at 1005 (analyzing and "agree[ing] with" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011)). In short, there appears to be a circuit split about this issue, but this Court has been on one side of that split for years. The panel's opinion below did not "entrench" or "deepen" that split.

Given the split, it seems likely that the Supreme Court will resolve the issue at some point. This Court should not waffle back and forth about the issue in the meantime.

But even if this Court wanted to go en banc and reverse *Sali*, as noted above this is not the case in which to do so. <u>First</u>, this case was about something else entirely: the categorical rule that Nutramax sought. In fact, Nutramax never cited *Sali*, never mentioned a circuit split about this or anything else, and never cited the sister circuit cases that it now cites. Nutramax cannot frontally attack *Sali* and make hay about a circuit split for the first time in a petition for rehearing.

<u>Second</u>, the district court below held that Dr. Dubé's opinion was admissible, and the panel never held to the contrary or otherwise found reliability problems with that opinion, so this is not a case that actually

hinges on the admissibility issue that Nutramax now claims is so important.[2]

## C. The Opinion does not "undermine" the rigorous analysis or create any "perverse incentives."

Finally, Nutramax argues that the panel's opinion "undermines" the rigorous analysis required and creates "perverse incentives." Pet. at 16-22. Neither is true.

As an initial matter, it's worth reiterating the panel's correct recognition that district courts in this Circuit—who are on the front line of dealing with the practical realities of class actions every day—have certified classes in the exact situation presented here and then managed those cases to resolution. Pet.App.24a–25a. None of those courts applied, needed, or requested the categorical rule that Nutramax sought here, and none have mentioned any of the supposed practical problems with the panel's opinion that Nutramax now raises. Those supposed problems are unfounded specters.

---

[2] The panel could grant a limited rehearing and remove any reference to the evidence not needing to be admissible, and/or it could cite *Sali* while noting that it is not taking any position on *Sali*'s continued viability given that the issue was never raised. Either way, there is no reason to think that the result would change here, and Nutramax does not argue how or why it would change.

Nutramax argues that, under the panel's opinion, class action plaintiffs have an incentive not to "fully develop" their model. Pet. at 17-18. Not so, because as the panel recognized, plaintiffs must do more than "merely gesture at a model or describe a general method." Pet. App.31a (cleaned up). They must do much more, and enough to show persuasively that the model will generate classwide results. Dr. Dubé did exactly that here. In fact, he did fully develop the model—he simply did not execute it.

Furthermore, there are no such perverse incentives here (or in similar situations) because, as the panel recognized, Plaintiffs "may not avoid ultimate scrutiny" of Dr. Dubé's opinion simply by not actually executing his damages model before class certification. That is because Nutramax, on remand, "must be given the opportunity in advance of trial" to further challenge Dr. Dubé's model "once it has been executed, including through a motion for summary judgment and/or renewed *Daubert* motion." Pet.App.34a. Plaintiffs have no incentive to delay

execution of a damages model just to get class certification given that "ultimate scrutiny" before trial cannot be avoided.[3]

Nutramax claims that the district court did not resolve a specific "factual dispute[]" over whether Dr. Dubé had or would be able to obtain certain input data that he would need. Pet. at 18. But as the panel correctly recognized, the district court simply "credited Dr. Dubé's implicit conclusion that he would be able to obtain such data prior to trial. Nutramax has not convincingly demonstrated that the district court erred in reaching this conclusion." Pet.App.32a. Nutramax fails to explain why that finding is wrong, why a model needs to be executed because of such a finding (or lack thereof), or otherwise why there's some problem with that finding.

---

[3] One practical reason why Plaintiffs did not execute the survey here before seeking class certification is that certain population data necessary for the survey is very expensive and corresponds to the precise questions asked in the survey, and therefore would have to be re-purchased if the district court modified the proposed classes or claims in any way. Plaintiffs were incentivized not to take the final step of survey execution as a result, but the law does not and should not require such execution, and Plaintiffs were always incentivized to "fully develop" the model to allow for the required "rigorous analysis"—which is exactly what they did.

Nutramax also notes that the actual results of a damages model can be useful in determining whether the model shows classwide impact. Pet. at 17 & n.4, 20. That's true, as the panel's opinion recognized, but such results are not necessarily required, as the panel's opinion also recognized. Pet.App.27–28a. Where, as here, the model is fully developed and the type of its outputs are known, it is not necessary to see the actual outputs—to not just know that the model will generate classwide data, but also to see whether the data will help or harm the plaintiff's case.

Nutramax next argues that "[u]nderlying the opinion is the assumption that, regardless of how the model turns out or whether it is later excluded, the result will be a merits issue common to the class." Pet. at 18. But that is not an *assumption*; that is a *finding/conclusion* based on evidence, in the district court's 36-page thorough analysis then thoroughly analyzed by the panel. Similarly, Nutramax asserts that Plaintiffs need "to prove—not merely plead" that Dr. Dubé's model will show a classwide impact, Pet. at 19, but that's exactly what they did.

Nutramax next claims that the panel erred in noting that "[i]f, as Plaintiffs contend, Cosequin provided no benefits to joint health, it is still more plausible that the consumers would have paid less had they known

the truth," because "that is not what Dr. Dubé's model would measure." Pet. at 20 (quoting Pet.App.40a). But that is precisely what Dr. Dubé's model will measure, as Nutramax's own summary of the model shows: the model will show the amount less that each class member would have paid if the false label claims were not present.[4] It's unclear why Nutramax claims otherwise. More generally, the district court and the panel were both well aware of what types of data the model will generate; the real issue was simply whether the data needs to show before class certification that the class members were actually damaged, and it does not.

---

[4] More specifically: (1) the aggregate of individual survey respondents' changes in demand (and related willingness-to-pay) after removal of the false label claims ("had they known the truth") will, after a specified benchmarking process, show a price premium due to the false label claims, and (2) that premium is a classwide damages amount (even for any class member who might not have cared about the false labels, because that person still overpaid compared to what the price would have been). 2-ER-131–68. As the panel recognized, that conjoint method is "well-accepted." Pet.App.32a. And the causation/materiality element under California law is objective and also classwide here. *E.g.*, *Stearns v. Ticketmaster*, 655 F.3d 1013, 1022 (9th Cir. 2011) (noting that "[c]ausation, on a classwide basis, may be established by [objective] materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."); *see* Pet.App.34a–42a.

Finally, Nutramax attacks the panel's recognition that the mere "possibility" of problems with the model's outputs does not doom class certification. Pet. at 21. But that is true as a matter of law. Plaintiffs do not pretend that there's literally nothing that might go wrong when the model is executed, but the fact is that Dr. Dubé's model was fully developed and fully scrutinized and will produce classwide results. What might go wrong for Plaintiffs is a showing of no damages or minimal damages, but that is still a classwide result.

## CONCLUSION

The petition should be denied.

Dated: June 20, 2024

*/s/ Mark R. Sigmon*
Mark R. Sigmon
Milberg Coleman Bryson
  Phillips Grossman, PLLC
5 W. Hargett Street
Suite 1001
Raleigh, NC 27601
(919) 451-6311
msigmon@milberg.com

Michael H. Pearson
Daniel L. Warshaw
Pearson Simon
  & Warshaw, LLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403
(818) 788-8300
mpearson@pwfirm.com
dwarshaw@pwfirm.com

*Counsel for Appellees*

*Counsel for Appellees*

Greg F. Coleman
Adam A. Edwards
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
800 S Gay Street
Suite 1100
Knoxville, TN 37929
(865) 247-0080
gcoleman@milberg.com
aedwards@milberg.com

*Counsel for Appellees*

Matthew D. Schultz
LEVIN, PAPANTONIO,
  RAFFERTY, PROCTOR,
  BUCHANAN, O'BRIEN,
  BARR & MOUGEY, PA
316 S Baylen Street
Suite 600
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com

*Counsel for Appellees*

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-55744

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 4,176 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Mark R. Sigmon       **Date** | 6/20/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** | *Rev. 12/01/2021*